UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DIANA ELIZABETH GUETHLEIN,

    Plaintiff

v.                                       Case No. 1:09-cv-451-HJW

JOHN E. POTTER, POSTMASTER GENERAL,

    Defendant

## ORDER

This matter is before the Court upon the defendant's Motion for Partial Dismissal (doc. no. 9), which plaintiff opposes. The Magistrate Judge issued a Report and Recommendation (doc. no. 23), recommending that Counts 1 and 2 of plaintiff's complaint be dismissed pursuant to Rule 12 and that the basis for Count 3 be limited to specific incidents regarding plaintiff's suspension from employment. Plaintiff filed objections (doc. no. 28), and defendant responded (doc. no. 29). Upon a *de novo* review of the record, including the objections and response, the Court finds that the Magistrate Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case. The Court therefore will **adopt** the Report and Recommendation for the following reasons:

**I.  Background and Factual Allegations**

The following alleged facts appear in plaintiff's 32-page complaint (doc. no. 3) and 53 pages of attachments (doc. no. 3-1). Plaintiff began working for the United States Postal Service ("USPS") in 1985 as a letter carrier (doc. no. 3 at 7, ¶ 1). As a result of an injury she sustained to her back in 1987, plaintiff indicates she had

physical restrictions (¶ 3). Plaintiff returned to postal employment in 1992 and was employed as a general clerk by the USPS at various locations near Cincinnati, Ohio over the next decade (¶ 4).  In November of 2003, she worked at the Mid-City Station (doc. no. 3 at 18, ¶ 21). She alleges that under a "Limited Duty Assignment Order" for shared services, she worked mornings at the IRS, which had positions "set up for permanent injured employees to work" (doc. nos. 3 at 18, ¶ 24; 3-1 at 18).

On August 17, 2004, plaintiff claims that her supervisor, Jim Price, told her do a task that was "outside her restrictions."[1]  She advised him of this and filled out a form for sick leave for her one remaining hour of work (doc. no. 3 at 18, ¶ 32). Plaintiff alleges that Price refused to sign it and became angry (¶¶ 31, 34, 36). Plaintiff alleges that "as a result of the incident....she could not speck (sic) in sentences . . . [and] cried continuously" (¶ 38).  Plaintiff filed a union grievance and EEOC complaint against Price (doc. nos. 3 at 20, ¶¶ 37, 39;  3-1 at 19).

On September 28, 2004, plaintiff alleges that Ed Westerfield, the manager of the Mid-City Station, told her that she was being transferred to Murray Station because there was no work for her to do at Mid-City (doc. no. 3 at 20-21, ¶¶ 43-44). She alleges that this was a "pretest" (sic) (doc. no. 3 at 25, ¶ 72, 82). Plaintiff indicates that the next evening on September 29, 2004 she had intense anxiety and that her doctor ordered her not to return to work (¶¶ 45-46). Plaintiff indicates her requests for FMLA leave due to anxiety were approved from October 4, 2004 for 90

---

[1]She alleges he told her to "move an APC," but does not explain what an APC is (doc. no. 3 at 19, ¶ 29).

days, and from January 11, 2005 for another 90 days until April 2, 2005 (¶¶ 47-48). Plaintiff indicates that her doctor then advised the USPS that plaintiff would not be able to return to work at that time (¶ 55). Plaintiff does not allege she was denied any leave other than the one hour in 2004.

On January 12, 2005, plaintiff received a letter from Mr. Westerfield requesting her to fill out FMLA papers for her extended 90-day leave (doc. nos. 3 at 21, ¶ 49; 3-1 at 40).[2] Plaintiff ignored the request (doc. no. 3 at 22, ¶ 50). On January 25, 2005, she received notification to report for a pre-disciplinary interview for failure to comply, which she also ignored. She thereafter received a "Letter of Warning" dated February 8, 2005, emphasizing the importance of complying and warning her of the consequences for failing to do so (doc. no. 3-1 at 38-39). On April 12, 2005, Mr. Westerfield again requested "acceptable documentation of your inability to report for duty" (Id. at 34-35). On April 20, 2005, she was notified by mail of a second chance to report to the Mid-City Station on April 27, 2005, for a rescheduled pre-disciplinary interview. Once again, plaintiff ignored it. She then received a Notice of Suspension dated April 29, 2005 (doc. nos. 3 at 24, ¶ 65; 3-1 at 29-30). Plaintiff indicates that she ignored all the notices because she believed (incorrectly) that Westerfield was not her manager and was not entitled to the information (doc. no. 3 at 24, ¶ 64).

Meanwhile, on April 21, 2005, plaintiff contacted the Equal Employment

---

[2] An employer may require the eligible employee to provide, in a timely manner, certification by a health care provider. 29 U.S.C. § 2613(a).

Opportunity Commission ("EEOC") and her union to file a grievance regarding the letters. As a result, her suspension was reduced to a letter of warning (doc. no. 3-1 at 24, 37). On August 3, 2005, plaintiff filed a second EEOC complaint alleging retaliation and discrimination based upon gender, age and disability "starting on August 17, 2004" (Id. at 16, ¶¶ 14-15). She identified specific dates of "January 12, 2005, January 28, 2005, and April 20, 2005," which are the dates of letters she received (Id. at ¶ 15). She indicated that the alleged discrimination occurred at "Murray Station and Mid-City Station" by Ed Westerfield and Bill Miller (Id. at ¶¶ 11-12). She later withdrew her claims of sex and age discrimination (Id. at 22, fn.1).

The Postal Service accepted and investigated the April letters and notice of suspension. Plaintiff's other allegations were dismissed on the basis of untimely EEOC counselor contact pursuant to 29 C.F.R. § 1614.105(a)(1) (doc. no. 3-1 at 22-25) With respect to plaintiff's allegations about Mr. Price on August 17, 2004, the Postal Service also dismissed pursuant to 29 C.F.R. § 1614.107(a) because plaintiff had raised an identical claim in a previous complaint.

An Administrative Law Judge ("ALJ") found that plaintiff had acknowledged receiving the letters and not responding to them. The ALJ found that a hearing was not necessary and issued a decision finding no discrimination by the USPS (which adopted the ALJ's decision as its final agency action). Plaintiff filed an administrative appeal, and the EEOC's Office of Federal Operations affirmed the decision on March 25, 2009 (doc. no. 3-1 at 22, fn. 2, noting that plaintiff did not challenge the partial dismissal and had waived review of those issues). Plaintiff

requested reconsideration. Prior to a ruling, she filed the present federal action.

In her three-count federal complaint, plaintiff greatly expands her claims beyond the scope of her 2005 EEOC complaint. She attempts to sue 17 postal employees, supervisors, and managers at six different locations for alleged acts spanning nearly two decades from 1987 to 2005, during which she indicates she held at least 15 different positions at the USPS. She also attempts to reassert the claim about Mr. Price from her 2004 EEOC complaint. She seeks ten million dollars in damages (doc. no. 3-2, ¶ VII).

In Count One, plaintiff asks the Court to find that she "was forced to work in a hostile environment from the date of her physical injury, July 1987, until she was forced out of her employment by the harassing treatment she received by Jim Price, Ed Westerfield and Bill Miller"(doc. no. 3 at 27, ¶ A). She concludes that all her positions "when taken as a whole, have created a hostile work environment based totally on failure to accommodate Guethlein's disability which occurred during her mail carrier service and directly caused a severe mental illness" (Id. at 10, ¶ 11).

In Count Two, she asks this Court to find that she "was discriminated against by Jim Price" regarding the August 17, 2004 incident where she was allegedly asked to perform a task outside her restrictions.

In Count Three, she asks the Court to find that she "suffered retaliation from USPS management" when Ed Westerfield transferred her back to Mid-City Station allegedly "so that he could suspend her from work [for] failure to follow instruction (sic)" (doc. no. 3 at 27, ¶ C).

## II. Issues Raised

The issues before this Court are: 1) whether the Postmaster General is the only appropriate defendant here; 2) whether to strike the plaintiff's request for punitive damages because such damages are expressly precluded by statute; 3) whether to dismiss Counts 1, 2 and part of Count 3 because plaintiff did not administratively exhaust the underlying claims and/or did not timely raise them; and 4) whether new arguments raised for the first time in plaintiff's objections have been waived and need not be addressed.

## III. Relevant Law

Plaintiff's complaint refers to the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12111 et. seq.), and the Rehabilitation Act ( 29 U.S.C. § 791 et seq.). Under the Rehabilitation Act, the USPS is prohibited from discriminating against an employee "solely by reason of her or his disability." 29 U.S.C. § 794(a). The Rehabilitation Act, rather than the ADA, provides the exclusive remedy for USPS employees asserting a claim of disability discrimination. 42 U.S.C. § 12111(5)(B)(I); Jones v. Potter, 488 F.3d 397, 403 (6th Cir. 2007); Peltier v. United States, 388 F.3d 984, 989 (6th Cir. 2004).

The Court of Appeals for the Sixth Circuit analyzes claims under the ADA and Rehabilitation Act concurrently "because the purpose, scope, and governing standards of the acts are largely the same, cases construing one statute are instructive in construing the other." Doe v. Woodford Cnty. Bd. of Educ., 213 F.3d 921, 925 (6th Cir. 2000). Hence, analysis of ADA claims applies to claims under the

Rehabilitation Act. <u>Jones</u>, 488 F.3d at 404; <u>Jakubowski v. Christ Hosp., Inc.</u>, 627 F.3d 195, 200 (6th Cir. 2010).

IV. <u>Analysis</u>

A. <u>Standard of Review</u>

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. The first step in testing the sufficiency of the complaint is to identify any conclusory allegations. <u>Ashcroft v. Iqbal</u>,129 S.Ct. 1937, 1950 (2009). "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id</u>. at 1949 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). "Although the court must accept well-pleaded factual allegations of the complaint as true for purposes of a motion to dismiss, the court is not bound to accept as true a legal conclusion couched as a factual allegation." <u>Twombly</u>, 550 U.S. at 555. Labels, conclusions, and formulaic recitations of the elements of a cause of action "will not do." <u>Id</u>. A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." <u>Lewis v. ACB Business Serv., Inc.</u>, 135 F.3d 389, 406 (6th Cir. 1998).

B. <u>Whether the Postmaster General is the only proper defendant</u>

Defendant asserts that pursuant to statute, the only appropriate defendant in an employment discrimination action against the federal government or any of its agencies is "the head of the department, agency or unit, as appropriate." 42 U.S.C. §2000e-16(c). Hence, Postmaster General John E. Potter, is the only proper

defendant here.

Plaintiff concedes this point in her response (doc. no. 16 at 5) and points out that she has moved to dismiss all defendants originally listed in the complaint, other than the Postmaster General.  The record reflects that this Court has already dismissed all the individual defendants (doc. no. 7, Order dismissing Price, Collett, Westerfield, Miller, Aukerbauer, DuPrie, Zerhausen, Hawks, Lang, Bramlege, Comos, Meiman, Angelicia, Ross, McGuire & Porter).  This leaves Postmaster General John E. Potter as the only remaining defendant.

In her brief, plaintiff expresses some confusion as to whether the defendant believes the USPS and Postmaster General John E. Potter are different entities for purposes of this action (doc. no. 16 at 5).  She explains that she did not perceive them as separate entities and that "to the extent that any portion of the Complaint gives the impression that the [USPS] is a separate Defendant herein, Guethlein moves this Court to strike such reference" (Id.).  This is unnecessary, as suing a person as the head of a federal agency is the same as suing the government itself. For clarity's sake, the caption of the Complaint should reflect that the sole defendant in this action is Postmaster General John E. Potter.  Indeed, the Report and Recommendation already reflects the correct caption.

**C.  Whether to strike plaintiff's request for punitive damages**

Plaintiff concludes her lengthy complaint with a request for punitive damages (doc. no. 3 at 27, ¶ F).  Defendant points out that punitive damages are not available against the government and its agencies (including the USPS) in an employment

-8-

discrimination action (doc. no. 9 at 9). Defendant therefore asks that plaintiff's request for punitive damages be stricken from the complaint.

Although the Civil Rights Act of 1991 provides for punitive damages in limited circumstances, it specifically exempts "a government, government agency or political subdivision" from punitive damages. 42 U.S.C. § 1981a(b)(1). The Court of Appeals for the Sixth Circuit has specifically held that the USPS is a "government agency" for purposes of Title VII " and is "exempt from punitive damages." <u>Robinson v. Runyon</u>, 149 F.3d 507, 517 (6th Cir. 1998).

Plaintiff concedes that "there may be no punitive damages available to her in this action" but then inconsistently asks the Court "to allow the jury to decide" (doc. no. 16 at 19). Plaintiff fails to comprehend that if punitive damages are not statutorily available from the USPS, she may not ask the jury to consider awarding them. Plaintiff's request for punitive damages will be stricken.

### D. Whether to dismiss Counts 1, 2 and part of Count 3

Plaintiff objects to the Magistrate Judge's recommendations that 1) Count One be dismissed on the basis that plaintiff failed to raise her "hostile work environment" claim administratively; 2) Count Two be dismissed because plaintiff failed to timely raise such claim; and 3) Count Three should be limited to the scope of the administrative investigation and decision upon plaintiff's 2005 EEOC complaint.

It is well settled that a plaintiff must exhaust administrative remedies before bringing an employment discrimination suit in a federal district court. 29 C.F.R. §§ 1614.101 et seq.; <u>Horton v. Potter</u>, 369 F.3d 906, 910 (6th Cir. 2004). Congress

intended to require employees complaining of disability discrimination "to exhaust administrative remedies before availing themselves of judicial remedies under the Rehabilitation Act." Smith v. U.S. Postal Service, 742 F.2d 257, 262 (6th Cir. 1984) (dismissing postal employee's action for employment discrimination under the Rehabilitation Act for failure to exhaust administrative remedies).

Specifically, federal regulations require that an employee must bring a complaint of discrimination to the EEOC counselor for that federal agency within forty-five (45) days of the date of the alleged discriminatory acts or, in the case of a personnel action, within forty-five (45) days of the effective date of the action. 29 C.F.R. § 1614.105(a)(1). If an employee fails to comply with the 45-day limitation period, the agency must dismiss the claim. 29 C.F.R. § 1614.107(a)(2). The employee may file a civil suit in federal court within 90 days of receipt of notice of final action by the agency on his complaint. 42 U.S.C. § 2000e-16(c).[3] Plaintiff makes a convoluted argument for an exception to the 45-day rule with respect to the January 12, 2005 and February 8, 2005 letters. However, the Postal Service accepted only the timely claims in her 2005 EEOC complaint for review, and plaintiff did not appeal the partial administrative dismissal.

Plaintiff tries to circumvent the exhaustion requirement by arguing that her

---

[3]Although not jurisdictional, these exhaustion requirements are similar to a statute of limitations and are subject to tolling, waiver, and estoppel. Seay v. Tenn. Valley Auth., 339 F.3d 454, 469 (6th Cir. 2003); Truitt v. County of Wayne, 148 F.3d 644, 646-47 (6th Cir. 1998). Equitable tolling is "available only in compelling circumstances which justify a departure from established procedures." Puckett v. Tenn. Eastman Co., 889 F.2d 1481, 1488 (6th Cir. 1989).

2005 EEOC complaint was "actually" a continuing hostile work environment claim dating back to 1987. This characterization is inaccurate and self-serving. She never mentioned any acts prior to 2004 in her administrative complaints. Her 2005 EEOC complaint refers only to the 2004 incident with Mr. Price and the 2005 letters that led to her suspension. Plaintiff even specifically indicated in her 2005 EEOC complaint that she was complaining of acts "starting on August 17, 2004" (rather than 1987) and specifically identified the dates of the letters: January 12, 2005, January 28, 2005, and April 20, 2005 (doc. no. 3-1 at 16). To the extent plaintiff is now attempting to expand her claims far beyond the scope of her 2005 EEOC complaint, unexhausted and untimely claims may not be asserted here.

In her federal complaint, plaintiff makes numerous allegations against 17 different people at six stations over eighteen years. However, her 2005 EEOC complaint only referred to two stations (i.e. the ones relating to her transfer), two managers, and the incidents in 2004 and 2005 (doc. no. 3-1 at 16). Plaintiff's belated attempt to mischaracterize her 2005 EEOC complaint in order to save her present unexhausted claims from dismissal is unavailing. The record reflects that the form instructions for the EEOC complaint expressly advised plaintiff that "while your complaint is under investigation, you may amend it to add claims that are like or related" (doc. no. 3-1 at 17, ¶ I). Although she was informed that she had the opportunity to do so, plaintiff did not amend her 2005 EEOC complaint to allege any other acts or any sort of "continuing violation" dating back to 1987.

In her objections to the Magistrate Judge's Report and Recommendation,

plaintiff apparently recognizes that she has failed to exhaust and/or timely raise the claims in Counts One and Two (and part of Count Three). Rather than addressing the Magistrate Judge's actual recommendations, she attempts to find a way around it by adding new material and arguments. Her only reference to the Magistrate Judge's legal conclusions is a citation to two non-binding cases from another circuit that she believes support her attempt to recharacterize her 2005 complaint, and bring unexhausted claims as a "continuing violation."

In the Sixth Circuit, the claimant must file the claim in an EEOC charge or the claim must reasonably be expected to grow out of the EEOC charge. <u>Weigel v. Baptist Hosp. of East Tennessee</u>, 302 F.3d 367, 380 (6th Cir. 2002) (observing that the complaint is generally "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination"). Plaintiff satisfies neither prong here. Plaintiff never raised an administrative claim of hostile work environment, and the facts alleged by plaintiff in her 2005 EEOC complaint would <u>not</u> prompt the EEOC to investigate a "continuing" violation going back to 1987. Her present claims in Count One are not reasonably related to her 2005 EEOC complaint. Her present claim regarding the 2004 incident (the basis for Count Two) was dismissed as untimely and previously-adjudicated by the EEOC.

The Magistrate Judge's Report and Recommendation correctly noted that the single timely raised claim is Count Three's claim of retaliation, to the extent it is based on the April 2005 letters and notice of suspension for failing to comply with written instructions to submit documentation for extended FMLA leave. Those

"discrete acts" are not related to plaintiff's allegations of failure to accommodate and disparate treatment dating back to 1987. See <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 120 fn. 12 (2002) (noting that liability for discrete acts, unlike hostile work environment claims, "does not depend upon proof of repeated conduct extending over a period of time"). Most of the incidents now complained of by plaintiff occurred many years before 2005. Plaintiff does not explain why her administrative actions never mentioned most of the incidents she now seeks to include in her federal complaint.

With respect to plaintiff's attempt to mischaracterize her suspension as evidence of a "continuing violation," plaintiff's reliance on the <u>Morgan</u> decision is misplaced. See <u>Morgan</u>, 536 U.S. at 117 ("[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability"). Such decision does not permit her to circumvent the exhaustion requirements of the federal regulations merely by mislabeling her claim as a "continuing" violation.

To be a continuing violation, the violation occurring within the limitations period "must be sufficiently similar or related to the time-barred acts, such that it can be said that the acts are all part of the same pattern of discrimination." <u>Weigel</u>, 302 F.3d at 376-77; and see, <u>Haithcock</u>, 958 F.2d at 678 (observing that incidents were "sufficiently interconnected to satisfy the definition of continuing violations"). The April 2005 letters and suspension were separate acts that were unrelated to the

-13-

time-barred acts. Morgan, 536 U.S. at 114; Sasse v. U.S. Dept. of Labor, 409 F.3d 773, 782 (6th Cir. 2005). The 2005 letters and notice of suspension were "discrete acts" that cannot properly be characterized as similar in any way to the alleged denial of one hour of FMLA leave in 2004 by a different manager or the other acts by other individuals at other stations listed in the complaint. The 2005 letters and notice of suspension do not reflect a pattern of similar discriminatory acts continuing from 1987 and are not "continuous or ongoing." Weigel, 302 F.3d at 376-77; Gallagher v. Croghan Colonial Bank, 89 F.3d 275, 278 (6th Cir. 1996). Plaintiff's attempt to avoid dismissal of unexhausted and untimely claims by characterizing them as a "continuing violation" is unavailing.

**E. Whether plaintiff has waived certain "new" arguments raised for the first time in her objections**

Plaintiff improperly raises new arguments in her objections to the Report and Recommendation. For example, plaintiff claims for the first time that her mental health somehow prevented her from timely contacting an EEO counselor regarding the first few letters (although she indicates she was able to file her FMLA requests and contact various other individuals, such managers, doctors, and union officials during her extended leave).[4] Plaintiff also belatedly attempts to expand the record

---

[4]Regarding her belated tolling argument, "one who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." Baldwin County Welcome Center v. Brown, 466 U.S. 147, 151 (1984)(dismissing a Title VII complaint for untimeliness and observing that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants"). Moreover, the complaint refutes her new argument for tolling, as she indicates she did not respond to the

-14-

and rely on her own "Supplemental Affidavit" (doc. no. 28-1). She urges that her first EEOC Complaint (filed on December 3, 2004) regarding Mr. Price's alleged refusal to sign her one-hour leave request should be considered a modification of the 2005 EEOC Complaint (doc. no. 28 at 16). Plaintiff apparently has them reversed, as this is illogical. In any event, the administrative decision found that plaintiff's 2004 EEOC complaint about Mr. Price had already been adjudicated and could not be reasserted in her 2005 complaint (doc. no. 3-1 at 22, fn.2). Plaintiff did not challenge this.

The Magistrate Judge did not have the opportunity to consider plaintiff's newly-raised arguments. The Magistrate Judge Act, 28 U.S.C. § 631 et seq., provides for *de novo* review by the district court if timely objections are filed. "[A]bsent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." Murr v. United States, 200 F.3d 895, 902 fn.1 (6th Cir. 2000). See also, United States v. Waters, 158 F.3d 933, 936 (6th Cir. 1998) (citing Marshall v. Chater, 75 F.3d 1421, 1426-27 (10th Cir.1996) ("issues raised for the first time in objections to magistrate judge's report and recommendation are deemed waived")). Plaintiff is represented by counsel and has presented no reason, much less any compelling reason, as to why she failed to raise these arguments in time for the Magistrate Judge to consider them. Presenting a new and different argument in objections is improper. As counsel should know,

---

notices because she did not think Mr. Westerfield was her manager, not that she was "unable" to respond. Plaintiff has presented no compelling circumstances that would justify tolling. See Benford v. Frank, 943 F.2d 609 (6th Cir. 1991) (finding no grounds for the exhaustion requirement to be tolled, waived, or estopped).

"the Magistrate Judge Act ... does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." Murr, 200 F.3d at 902 fn .1.  Therefore, this Court need not consider them. Id.

### V.  Conclusion

Accordingly, the Court hereby **ADOPTS** the Report and Recommendation of the United States Magistrate Judge (doc. no. 23).  Defendant's Motion for Partial Dismissal (doc. no. 9) is **GRANTED**.  Counts I and II of the Complaint (doc. no. 3) are **DISMISSED**.  With respect to Count III, only the exhausted claims (concerning the letters of April 12 and 20, 2005 and the April 29, 2005 Notice of Suspension) are properly before the Court.  Plaintiff's request for punitive damages (doc. no. 3 at 27, ¶ F) is **STRICKEN** from the Complaint.  This case is RECOMMITTED to the United States Magistrate Judge for further proceedings according to law.

IT IS SO ORDERED.

                                                    s/Herman J. Weber  
                                               **Herman J. Weber, Senior Judge**  
                                               **United States District Court**