# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DIANA ELIZABETH GUETHLEIN,                     Case No. 1:09-cv-451

    Plaintiff,                                 Weber, J.
                                               Bowman, M.J.

    v.

PATRICK DONAHOE, Postmaster General,
United States Postal Service,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, through counsel, initiated this action by filing a complaint on July 6, 2009 against her former employer, the United States Postal Service,[1] alleging employment discrimination and retaliation. Most of Plaintiff's claims were dismissed by this Court on February 17, 2011. (*See* Docs. 23, 30).

Defendant has now filed a motion for summary judgment (Doc. 46) concerning Plaintiff's sole remaining claim for retaliation. Plaintiff has filed a response in opposition (Doc. 51), to which Defendant has filed a reply (Doc. 52). Defendant's motion has been referred to the undersigned for initial consideration and a Report and Recommendation. 28 U.S.C. §636(b)(1)(B). For the reasons set forth herein, I recommend that Defendant's motion be granted.

---

[1]The caption of this case previously reflected the name of John Potter, the person who previously held the position of Postmaster General. However, pursuant to Federal Rule of Civil Procedure 25(d), Mr. Donahoe was automatically substituted as the proper defendant when he assumed the position of Postmaster General.

## I. Background

The facts alleged in Plaintiff's complaint were previously summarized by the presiding district judge in his February 17, 2011 Order, but are reiterated here for the convenience of the Court.[2]  To the extent that factual disputes exist, the Court has interpreted the facts in favor of the Plaintiff as the non-moving party.

Plaintiff began working for the United States Postal Service ("USPS") in 1985.  As a result of an injury, Plaintiff had physical restrictions that required accommodations. Pursuant to her need for accommodations, Plaintiff was employed as a general clerk at various USPS locations near Cincinnati, Ohio for more than a decade after 1992.  In 2004, at the times the events pertaining to this litigation began, she worked at the Mid-City Station, where Ed Westerfield served as her Manager.

On September 28, 2004, Mr. Westerfield informed Plaintiff that she was to be transferred from Mid-City Station to Murray Station, another Postal Service facility in the Cincinnati District.  However, Plaintiff never reported to work at Murray Station or any other location for the Postal Service after that day.  (Doc. 46-2, Plaintiff's Deposition at 13). Instead, Plaintiff requested and was awarded FMLA leave for anxiety for a three-month period of time beginning in October 2004.  She subsequently made a second request for leave from January 11, 2005 until April 2, 2005, which request was also granted.  (Doc. 3-1 at 9, ¶ 33; Doc. 46-1 at 2, ¶ 5).

---

[2]The facts have been compiled both from the Court's earlier opinion (*see generally* Doc. 30 at 1-5) and from the parties' memoranda concerning the pending motion.

While on leave, either on November 26, 2004 or on December 1, 2004,[3] Plaintiff filed an Equal Employment Opportunity ("EEO") Complaint against a direct supervisor at the Mid-City Station, Jim Price, alleging that on August 17, 2004, Mr. Price had instructed her to perform a task that was "outside her restrictions." (Doc. 3 at 19, ¶ 29; Doc. 46-1 at 2, ¶ 6; Doc. 51-1 at 1, ¶ 6). Mr. Westerfield was also listed in this EEO Complaint.[4]

Plaintiff claims that near the end of her first FMLA leave period, on January 11, 2005, she (or her physician) supplied "the FMLA department" of the Postal Service, at an unspecified location, with medical documentation to support an extension of her FMLA leave. (Doc. 51-14 at 69; *see also* Doc. 51-5, ¶ 13, Declaration of Dr. Rissover that she "renewed the request for FMLA in early January, 2005."). However, on January 12, 2005, Plaintiff received a letter from Mr. Westerfield requesting Plaintiff to provide "acceptable documentation to support" her second extended FMLA leave period. (Doc. 3-1 at 40-41). Plaintiff ignored that request "because Ed Westerfield was not my Manager at that time and I believed that he had no right to my FMLA papers." (Doc. 3-1 at 9, ¶ 36; Doc. 3 at 22, ¶ 50).

By letter dated January 24, 2005, Plaintiff was directed to report for a pre-disciplinary interview based upon her failure to comply or respond to the January 12 letter,

---

[3]Plaintiff now agrees that she signed the complaint on November 26, 2004 but claims that she did not file it until December 1, 2004. This minor discrepancy is not material to the pending motion for summary judgment.

[4]Plaintiff originally alleged in her complaint that Mr. Westerfield transferred her to Murray Station on September 29, 2004 "in retaliation for Guethlein filing an EEO [Complaint] against Jim Price." (Doc. 3 at 16). However, Plaintiff has since conceded that the record clearly shows she did not file a formal EEO Complaint until at least two months later, in November or December 2004.

but she ignored that letter as well.[5]  Next, she received a formal disciplinary "Letter of Warning" dated February 8, 2005 from a supervisor named Ron Muirhead, based upon her failure to contact management or provide an explanation of her failure to comply with the prior two letters.  Despite her lack of any response to the three letters of January and February 2005, Plaintiff remained on approved FMLA leave not only for the first 90-day period, but for a second 90-day period, until April 2005.  (Doc. 46-1 at 2-3, ¶ 10).  At some point near the end of her second FMLA leave period in early April, Plaintiff's physician, Janalee Rissover, M.D., submitted an additional  medical statement to the Defendant's "Medical Unit" (but not Mr. Westerfield), stating that Plaintiff required "indefinite" additional leave as of April 2, 2005.  (Doc. 51-14 at 70; Doc. 3-1 at 9, ¶34).

On April 6, 2005, the EEOC Investigator wrote to Mr. Westerfield with questions concerning his investigation of Plaintiff's earlier-filed EEO Complaint regarding the August 17, 2004 incident with Mr. Price.

On April 12, 2005, Mr. Westerfield wrote Plaintiff another letter, similar to the January 12, 2005 letter, that again requested "acceptable documentation of your inability to report for duty."  (Doc. 3-1 at 9, ¶¶ 34-35).  Plaintiff again declined to respond, although she claims that she forwarded the letter to her Union.

On or about April 16, 2005, Plaintiff alleges that she was transferred back to the Mid-City Station by Bill Miller, the manager of the Murray Station (Doc. 3 at 17) and/or by

---

[5]In her response to Defendant's motion, Plaintiff alleges she was "medically and emotionally" unable to attend, and also disputes Mr. Westerfield's authority, as manager of the Mid-City Station, to the extent that Plaintiff maintains she was an employee of Murray Station at the time.  (Doc. 51-1 at 2, ¶ 9).  However, Plaintiff alleges in an affidavit attached to her Complaint that she ignored all of the letters sent by Mr. Westerfield "because he was not my manager" and because she did not "feel that he had a right to the FMLA information."  (Doc. 3-1 at 9, ¶¶ 40, 43).

Mr. Westerfield. (Doc. 3 at 25; Doc. 3-1 at 11, ¶¶ 63, 68). By letter of April 20, 2005, Plaintiff was directed to report to the Mid-City Station on April 27, 2005 for a rescheduled pre-disciplinary interview based upon her continued failure to respond to Mr. Westerfield's requests. Again, Plaintiff persisted in refusing to respond directly to Mr. Westerfield. As a result, Plaintiff received a formal disciplinary Seven (7) Day No Time Off Suspension dated April 29, 2005, and signed by Mid-City Station Supervisor Ken Gilligan. (Doc. 3-1 at 10, ¶47). The letter stated on its face that the "Suspension" did "not result in a loss of time or pay," but was intended to be "equivalent to and ...of the same degree of seriousness as a time-off suspension." (Doc. 3-1 at 32). Plaintiff states that she ignored all of the letters and notices she received because she believed (incorrectly) that Westerfield was not her manager and was not entitled to the information he was requesting. (*See* Doc. 3 at 24, ¶ 64).

The Notice of Suspension included information about Plaintiff's right to appeal. On April 21, 2005, Plaintiff contacted the EEOC and her union to file a grievance regarding the April 2005 letters. (*See* Doc. 3-1 at 37; Doc. 51-1 at 3, ¶ 14). As a result of the grievance process which concluded on June 20, 2005, the February 8, 2005 Letter of Warning was entirely removed from Plaintiff's record, and the April 29, 2005 "Suspension" was reduced to a Letter of Warning. (Doc. 3-1 at 24, 37). The resolution of the grievance also specified that the April 2005 Warning was to be removed from Plaintiff's file if she had no further discipline by October 29, 2005. Plaintiff testified during her deposition that she did not agree to the union's resolution of her grievance on her behalf, but she admits that she was informed of the resolution by the union representative. (Doc. 51-15 at 8, Deposition at 29).

On August 4, 2005, Plaintiff filed a second complaint with the EEOC, alleging

retaliation and discrimination based upon her gender, age and disability "starting on August 17, 2004." (Doc. 3-1 at 16, ¶ 14-15). She identified specific dates of "January 12, 2005, January 28, 2005, and April 20, 2005," all of which coincided with the dates of letters she received. (Doc. 51-14).

The Postal Service accepted and investigated the April 2005 letters and Notice of Suspension. However, Plaintiff's other allegations were dismissed as untimely. The Postal Service also dismissed Plaintiff's allegations concerning the August 17, 2004 incident, based upon the fact that Plaintiff had presented an identical claim in her first EEO Complaint. (*See* Doc. 30 at 4).

An Administrative Law Judge ("ALJ") found that Plaintiff had acknowledged receipt of the April 2005 letters as well as to failing to respond to them. Determining that a hearing was not necessary, the ALJ issued a decision finding no discrimination by the USPS. Plaintiff filed an administrative appeal, but the EEOC's Office of Federal Operations affirmed the ALJ's decision on March 25, 2009. After requesting reconsideration, but prior to a formal ruling, Plaintiff initiated this federal action.

In this lawsuit, Plaintiff included a claim for a hostile work environment, a second claim based upon the August 17, 2004 incident, and a third claim for retaliation based upon her transfer back to Mid-City Station by Mr. Westerfield, allegedly "so that he could suspend her from work [for] failure to follow instruction (sic)." (Doc. 3 at 27, ¶ C). Plaintiff sought a total of ten million dollars in damages, from 17 different postal employees, supervisors, and managers at six different locations, for alleged acts spanning nearly two decades of her employment. (Doc. 30 at 5).

The scope of Plaintiff's claims was substantially narrowed by this Court's Order of

February 17, 2011.  (Doc. 30).  The Court first granted Defendant's motion to dismiss Plaintiff's claim for punitive damages.  The Court next dismissed Plaintiff's "hostile work environment" claim concerning the January 12, 2005 and February 8, 2005 letters, as well as the August 2004 claim, as unexhausted and/or untimely, and rejected Plaintiff's attempts to recharacterize all of her claims.  (*Id.* at 10-12).  The Court clarified that "the single timely raised claim is Count Three's claim of retaliation, to the extent it is based on the April 2005 letters and notice of suspension for failing to comply with written instructions to submit documentation for extended FMLA leave." (*Id.* at 12).

In addition to narrowing the focus of Plaintiff's complaint, the Court rejected Plaintiff's attempt to claim equitable tolling for her untimely claims, on the basis that "her mental health somehow prevented her from timely contacting an EEOC counselor regarding the first few letters (although she indicates she was able to file her FMLA requests and contact various other individuals, such [as] managers, doctors, and union officials during her extended leave)." (Doc. 30 at 14).  While the Court primarily rejected the "tolling" argument as waived because Plaintiff had failed to first present it before the magistrate judge,[6] (*see* Doc. 30 at 15), the Court also specifically pointed out that "the complaint refutes her new argument for tolling, as she indicates she did not respond to the notices because she did not think Mr. Westerfield was her manager, not that she was 'unable' to respond." (Doc. 30 at 14-15, n. 4).

---

[6]This case was previously referred to Magistrate Judge Timothy S. Hogan, but was reassigned to the undersigned magistrate judge following Judge Hogan's retirement.

## II. Analysis

### A. Defendant's Motion - Summary Judgment Standard of Review

In a motion for summary judgment, a court must view "the facts and any inferences that can be drawn from those facts - in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, inferences are not to be drawn out of thin air. To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.,* 475 U.S. at 586-587 (citation omitted). It is the Plaintiff's burden to point out record evidence to support her claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009)(citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

### B. Grounds for Defendant's Motion

As previously stated, the sole claim remaining is Plaintiff's assertion that Defendant sent her three letters in April 2005 in retaliation for her legally protected conduct of filing complaints of discrimination against Defendant in late 2004. Defendant first argues that summary judgment should be entered in its favor because Plaintiff cannot prove a prima facie case. In a separate and alternative argument, Defendant contends that even if this Court concludes that Plaintiff can prove her prima facie case, she cannot show

Defendant's proffered reason for sending the letters was pretextual.

The burden of establishing a prima facie case in a retaliation action "is not onerous," but one "easily met." *Nguyen v. City of Cleveland,* 229 F.3d 559, 565 (6th Cir. 2000)(*quoting EEOC v. Avery Dennison Corp.*, 104 F.3d 858 (6th Cir. 1997)). The *McDonnell Douglas/Burdine* burden-shifting framework is one way in which a plaintiff may establish a prima facie case of retaliation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Under that traditional framework, "[o]nce a *prima facie* case is established, the burden of producing some non-discriminatory reason falls upon the defendant." *Williams v. Nashville Network,* 132 F.3d 1123, 1131 (6th Cir. 1997), *citing Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987). "If the defendant demonstrates such, the plaintiff then assumes the burden of showing that the reasons given by the defendant were a pretext for retaliation." *Id*.

Therefore, even if the plaintiff establishes a prima facie case, the employer can still win judgment by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. If the employer carries its burden of showing a non-discriminatory reason for the adverse action, the employer will be entitled to judgment unless the plaintiff shows that the reason offered by the employer was not its true reason, but was instead a pretext for discrimination. *Id*. at 804; *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1395 (6th Cir. 1993). At all times, "the plaintiff continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 707

(6th Cir. 2006), (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993)).  Because Defendant sent all three April 2005 letters for non-discriminatory reasons that were not a pretext for discrimination, the Court begins with that issue.

### 1. Pretext

Although Defendant does not concede that Plaintiff can establish a prima facie case, Defendant alternatively has articulated a legitimate, non-discriminatory reason for sending the three April 2005 letters.  Plaintiff was assigned to the Mid-City Station in 2004 up until the last day she physically reported to work.   Mr. Westerfield was undeniably her manager at the Mid-City Station.  Although there is some evidence in the record that Mr. Westerfield executed a transfer order on September 28, 2004 that reassigned Plaintiff to the Murray Station, Plaintiff never reported for duty at her new station, but instead immediately applied for, and was granted, an extended 90-day period of FMLA leave.

Mr. Westerfield sent Plaintiff his first letter request for further documentation of her need for continued FMLA leave only at the end of Plaintiff's first FMLA leave period.  As this Court previously noted, "[a]n employer may require that a request for leave...be supported by a certification issued by the health care provider," provided "in a timely manner" by the eligible employee to the employer.  29 U.S.C. §2613(a); (Doc. 30 at 3, n.2).  While Plaintiff disputes Mr. Westerfield's authority to send her the letter request based in part upon her alleged transfer to the Murray Station at that point in time, given that Plaintiff never physically reported to the Murray Station, Mr. Westerfield's assumption that he retained managerial authority over Plaintiff was reasonable.   In fact, Plaintiff admittedly never explained to Mr. Westerfield the basis for her refusal to respond to his January 12, 2005 and all subsequent inquiries from him; she simply ignored the January 12, 2005 letter

and all subsequent related communications.

In addition to disputing Mr. Westerfield's managerial authority over her, Plaintiff generally disputes Mr. Westerfield's authority to request medical documentation. Plaintiff argues that under Postal regulations found in the Employee and Labor Relations Manual ("ELM"), employees are not required to submit evidence to support their claim of medical incapacity more than once every thirty days. Because Plaintiff alleges that she and/or her physician submitted records at the beginning of each FMLA leave period to a "medical department" at an unspecified location, she argues that Mr. Westerfield's separate request for records within thirty days was improper. However, Plaintiff admits that she never provided any explanation to Mr. Westerfield as to why she was ignoring his repeated requests, and there is no evidence in the record that Mr. Westerfield had received Plaintiff's medical documentation prior to the time that he sent his requests. The issue in this case is not whether Mr. Westerfield correctly interpreted and applied ELM policy, but rather, whether he had an honest belief that he could make a letter request for documentation of Plaintiff's continued FMLA leave at the time he made that request. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir 2001). On the record presented, Mr. Westerfield's routine request for information was objectively reasonable. As discussed below, the January and April 2005 letters requesting FMLA certification cannot be viewed as punitive or as "adverse" in any way.

All of the letters Mr. Westerfield sent to Plaintiff following January 12, including the three April 2005 letters at issue in this lawsuit, followed the same sequence and appear to have been sent for the same legitimate and non-discriminatory reasons. When Plaintiff did not respond to the January 12 letter, Mr. Westerfield warned her of the consequences

of failing to respond, and then scheduled a hearing. She did not respond or appear and was issued the February 8, 2005 "Letter of Warning" as a result.

Consistent with the January-February sequence of letters, Mr. Westerfield again made a facially legitimate request for documentation of Plaintiff's continued need for FMLA leave near the end of her second extended leave period, on April 12, 2005. When Mr. Westerfield again received no response, it was entirely reasonable for him to issue a second letter directing Plaintiff to appear on April 27, 2005 at Mid-City Station for a rescheduled pre-disciplinary interview. In fact, Plaintiff concedes that she was formally reassigned back to the Mid-City Station (under Mr. Westerfield's supervision) as of April 16, 2005, even though she disputes the propriety of that transfer.[7] The third and final April 2005 letter ostensibly imposed a "Suspension" based upon Plaintiff's failure to respond to the prior letters, and failure to appear at the April 27 hearing. When Plaintiff reacted by grieving her Suspension through her union, it was reduced to a Letter of Warning,[8] and ultimately removed after a period of six months.

Given that Plaintiff's last physical workday was at the Mid-City Station, Mr. Westerfield's actions were objectively reasonable and non-discriminatory. To the extent that further evidentiary support is needed, Defendant has submitted the Declaration of Steven Goebel, Human Resources Manager for the entire Cincinnati District, that Mr.

---

[7]Plaintiff concedes that her pay stubs reflected a transfer back to Mid-City Station as of April 16, but protests that the transfer required an Assignment Order to be effective. In support, Plaintiff offers the affidavit of Bill Miller, a former Postal Service employee who at one point was manager of the Murray Station, but who was acting as East side manager in April 2005. Mr. Miller has filed his own suit against the Postal Service and previously testified as another former employee's witness in *Renee Smith v. Potter*, 1:08-cv-390. Mr. Miller questions the procedures by which Plaintiff was reassigned to Mid-City Station, but notably, does not challenge Mr. Westerfield's authority to send Plaintiff the letters she received.

[8]The February 8, 2005 Letter of Warning also was removed entirely as a result of the same grievance.

Westerfield's actions in sending the letters were appropriate, based upon the fact that during the relevant time period, "Clerk Diana Guethlein was one of the employees over whom Mr. Westerfield had supervisory authority." (Doc. 46-4 at ¶ ¶ 2-6). Plaintiff never provided Mr. Westerfield with any explanation for her failure to respond; she did not write him, call him, or appear at two scheduled hearings. While Plaintiff argues strenuously that she believed that Mr. Westerfield was no longer her manager after her September 28, 2005 transfer to the Murray Station, it is not *Plaintiff's* explanation for her refusal to respond to the letters, but *Defendant's* explanation for sending the letters that determines whether the Defendant has offered a legitimate, non-discriminatory basis for its actions. On the facts presented, even assuming that Plaintiff can prove a prima facie case of retaliation, Defendant has offered a non-pretextual reason for sending all three letters; namely, Plaintiff's failure to respond to Mr. Westerfield's repeated inquiries.

Because Defendant has offered a legitimate non-discriminatory reason for sending the three April 2005 letters, in order to prove that Defendant engaged in retaliation, Plaintiff must demonstrate that the Defendant's reasons for sending the letters were pretextual. *See Imwalle v. Reliance Medical Products, Inc.,* 515 F.3d 531, 544 (6th Cir. 2008). To rebut Defendant's proffered explanation, Plaintiff must show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's conduct, or (3) that they were insufficient to motivate the challenged conduct. *See White v. Columbus Metropolitan Housing Authority*, 428 F.3d 232, 245 (6th Cir. 2005)*; Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Financial Services, Inc*.,

557 U.S. 167 (2009); *see also Chen v. Dow Chemical Co.*, 580 F.3d 394 (6th Cir. 2009).

The Sixth Circuit has categorized different evidentiary bases for three types of pretext showings. The first type of showing requires evidence that the proffered bases for the adverse actions never happened, *i.e.*, that they are "factually false." *Manzer*, 29 F.3d at 1084 (citation omitted). Plaintiff cannot show this because there is no evidence that Mr. Westerfield ever received any response to his inquiries from Plaintiff; rather, Plaintiff admits that she deliberately chose not to respond to Mr. Westerfield directly. The letters naturally flowed from Plaintiff's persistent lack of response. There is no evidence that Mr. Westerfield had received the medical documentation he sought in the first April 2005 letter before he sent that letter, and the FMLA supports the legitimacy of his general inquiry.[9]

The third showing "ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not ...[subjected to adverse action] even though they engaged in substantially identical conduct to that which the employer contends motivated its [action against]...the plaintiff." *Id.* "If the plaintiff establishes the first or third showing, a permissive inference of discrimination arises. *Id.* Here, Plaintiff has offered no evidence whatsoever that any other employees repeatedly ignored letters from a superior without any type of adverse action being taken. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required

---

[9]While she chose not to respond directly to Mr. Westerfield, Plaintiff admittedly contacted other postal managers and testified that she provided documentation to her union and to other Postal employees throughout the January -April 2005 time frame. Attached to Plaintiff's response is an opinion letter dated April 23, 2012 by Dr. Rissover that states that Plaintiff was psychologically too ill to respond to Mr. Westerfield's April 2005 letters. However, neither Dr. Rissover nor Plaintiff explain how she could respond to other managers and union officials concerning Mr. Westerfield's letters during precisely the same period of time. (See Doc. 3-1 at 9-10, Affidavit of Plaintiff stating that she sent documents and letters to her union and to other persons in management, and contacted Managers Miller and Brummett by telephone to protest Mr. Westerfield's letters).

by Rule 56(c), the court may...consider the fact undisputed for purposes of the motion." Rule 56 (e)(2), Fed. R. Civ. P.   With respect to the first and third bases under *Manzer*, then, Plaintiff cannot demonstrate that the letters were sent without any basis in fact or that the reasons for sending all three letters were factually insufficient to support those reasons.

For the second showing, where "the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate [the adverse action]," the plaintiff must introduce evidence of discrimination to show pretext. *Manzer*, 29 F.3d at 1084 (emphasis original).  If a plaintiff fails to carry his burden to rebut a defendant's legitimate, nondiscriminatory reasons for the termination, summary judgment is appropriate.  *See Barnhart v. Peckrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1395 (6th Cir. 1993).  Here, Plaintiff must present evidence creating a genuine issue of fact that Defendant's articulated reason is false and was a pretext for discrimination based on Plaintiff's 2004 action of filing an EEO Complaint.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at  506-507.  Plaintiff's evidence must be sufficient in opposition to a motion for summary judgment for the Court to submit the issue of pretext to the jury.  As the Sixth Circuit explained in *Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 n.4:

> At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation.  If so, her prima facie case is sufficient to support an inference of discrimination at trial. *Hicks,* 509 U.S. at 511, 113 S. Ct. 2742.  But summary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation.  *See Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 148 (2000).  ("[A]n employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.").

*Id*. Of course, in evaluating pretext, courts should not apply the three-part *Manzer* test in a formalistic manner. *See id*. "Pretext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id*. The court must "ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation and, if so, how strong [that evidence] is." *Id*.

As evidence of pretext, Plaintiff offers an "expert report" by Thomas F. Rosati, a retired District Manager/Executive of the Postal Service from the Long Island, New York District. Mr. Rosati opines that under the guidelines established in a Postal Service handbook, Mr. Westerfield "could have" obtained Plaintiff's medical records from another source, and that "[d]emanding that she submit medical records directly to him was not appropriate." (Doc. 51-11 at 4-5). Defendant first objects to the use of this expert on the basis that his report does not comply with Rule 26(a)(2) because it fails to list all cases in which the witness has testified over the past 4 years, fails to include a list of publications, and fails to list Mr. Rosati's compensation. Whether an expert report that does not fully comply with Rule 26(a)(2) should be considered on summary judgment appears to be an open question. *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)(*quoting Beyene v. Coleman Sec. Servs, Inc.,* 854 F.2d 1179, 1181 (9th Cir. 1988)(stating that "[i]t is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment"), but also noting the Supreme Court's admonition in *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), that the nonmoving party need not "produce evidence in a form that would be admissible at trial.").

However, regardless of whether the opinion of Mr. Rosati should be stricken based

upon the report's failure to strictly comply with Rule 26(a)(2), the opinion fails to establish that the letters were a pretext for discrimination. While Mr. Rosati apparently believes that Mr. Westerfield "utilized an inappropriate section of the Employee and Labor Relations Manual" when he sent his April 12, 2005 request for information, and could have selected another method in order to obtain the medical records (Doc. 51-11 at ¶6), his opinion that there were better ways for Mr. Westerfield to obtain the medical certification is not evidence that Mr. Westerfield's routine request was somehow based upon an intent to retaliate against Plaintiff. The three April letters duplicated the January/February sequence of nearly identical letters. The first letter in the series merely requested "acceptable documentation" of Plaintiff's inability to report for duty. (Doc. 3-1 at 34-35). Plaintiff has failed to show that the legitimate need to verify Plaintiff's continued entitlement to extended "indefinite" FMLA leave did not actually motivate Mr. Westerfield to send the first April letter. The second and third letters flowed naturally and directly from Plaintiff's admitted failure to respond to repeated requests for information. For that reason, the Court concludes both as a matter of commonsense and as a matter of law that Plaintiff cannot show that the April 2005 letters were a pretext for discrimination sent in retaliation for Plaintiff's pursuit of a 2004 discrimination claim.

The Court finds summary judgment to be appropriate in this case based upon that "commonsense inquiry" and the lack of any contrary evidence put forth by Plaintiff that would suggest that Defendant did not "honestly believe" in the proffered reasons for sending the April 2005 letters. *Accord, Majewski v. Automatic Data Processing, Inc.*, 274 F.3d at 1117. In the absence of evidence that Plaintiff's 2004 EEO Complaint played any role at all in Mr. Westerfield's April 2005 decision to seek information from Plaintiff

18

concerning her continued need for indefinite FMLA leave, this court will not second-guess the Defendant's facially reasonable explanation for Mr. Westerfield's three April 2005 letters. *See Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 627 (6th Cir. 2006)(a federal court is not a "'super personnel department,' overseeing and second guessing employers' business decisions.")(internal citation omitted); *see also Rumble v. Convergys*, Case No. 1:07-cv-979-HRW, 2010 WL 812775 at *12 (March 9, 2010); *Hedrick v. Western Reserve Care System*, 355 F.3d 444, 462 (6th Cir. 2004), *quoting Simms v. Okla. ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999)(additional citation omitted).

## 2. Prima Facie Case

Although this Court finds that Defendant is entitled to summary judgment based upon Plaintiff's inability to prove that Defendant's reasons for sending the letters were pretextual, the Court will briefly address Defendant's alternative argument that Plaintiff also fails to prove a prima facie case.  In order to establish a retaliation claim, an employee must establish (1) that she engaged in an activity protected by an applicable employment discrimination statute; (2) that this exercise of her protected rights was known to Defendant; (3) that Defendant thereafter took an employment action adverse to the Plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *See Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987); *see also Morris v. Oldham County Fiscal Ct.,* 201 F.3d 784, 792 (6th Cir. 2000).  Here, Defendant concedes the first two elements -that Plaintiff filed a 2004 EEO Complaint, and that Mr. Westerfield became aware of that complaint prior to sending the first April 2005

letter.[10]  Nevertheless, Defendant argues that Plaintiff cannot establish the third and fourth

elements of her retaliation claim: (a) that any "adverse employment action" occurred; or (b)

that a "causal connection" existed between her protected activity and any claimed adverse

action.

### a.  Adverse Employment Action

Defendant contends that it took no adverse action against Plaintiff because the

initial April 2005 "Suspension" was, within 2 months, grieved pursuant to the collective

bargaining agreement and reduced to a "Letter of Warning."  By the time Plaintiff filed her

second EEO Complaint that provides the basis for this lawsuit, the most "adverse action"

was the re-characterized Letter of Warning, which was subsequently removed from

Plaintiff's personnel file long before Plaintiff initiated suit.  Defendant denies that the

Warning had any impact upon Plaintiff's employment.  (Doc. 46-3 at ¶ 7), and even Plaintiff

testified that she did not know whether she had suffered any adverse consequences from

the temporary existence of the Letter of Warning.  (Doc. 46-1 at 33-34).

Defendant argues that under *Burlington Northern &. Santa Fe Railway Co. v. White*,

548 U.S. 53, 68 (2006), Plaintiff cannot show that any of the three April 2005 letters were

materially adverse, because the Letter of Warning was ultimately removed from Plaintiff's

record, and arguably was not serious enough to dissuade a "reasonable worker" from filing

or pursuing a discrimination claim.  This Court agrees that the initial January 2005 and April

---

[10]With regard to this element, Plaintiff asserts that Mr. Westerfield falsely stated in an affidavit that he "was unaware that [Plaintiff] had engaged in any protected EEO activity" prior to February 8, 2005, (Doc. 46-3, ¶¶3-4), because an EEOC investigative record refers to a November 10, 2004 "interview" with Mr. Westerfield concerning Plaintiff's allegations against Supervisor Price. In light of Defendant's concession that Mr. Westerfield was aware of Plaintiff's EEOC activity by the time he sent Plaintiff the first April 2005 letter, the precise date of his knowledge is not material to this *second* element of Plaintiff's prima facie case.

2005 requests for medical documentation of Plaintiff's continued entitlement to FMLA leave cannot possibly be viewed as adverse employment actions. However, the subsequent Warning/Suspension letters are more ambiguous in nature. At least two unpublished cases provide partial support for Defendant's view that a "Warning" letter might not be "adverse" enough, at least in some circumstances, to satisfy even the relatively low bar required under the *Burlington Northern* retaliation standard. *See, e.g. Melton v. U.S. Dep't of Labor*, 373 Fed. Appx. 572 (6th Cir. April 20, 2010)(per curiam)(holding that, if *Burlington Northern* test applied, a letter of warning that was merely a precondition to discipline set to expire six months after its issuance failed to constitute an adverse employment action sufficient to support a retaliation claim); *see also Jones v. Johanns*, 264 Fed. 463, 468 (6th Cir. 2007)(two non-disciplinary letters and a third letter of reprimand warning of *possible* discipline, sent over lengthy three and a half year period, would not "dissuade a reasonable employee from making or supporting a charge of discrimination"). On the other hand, the Supreme Court in *Burlington Northern* made clear that when evaluating what might dissuade a reasonable worker from making or supporting a charge of discrimination claim, "[c]ontext matters." *Id.,* at 69. And aside from the lack of any published authority in its favor, Defendant's argument requires this Court to view the April 2005 "Suspension" letter through the prism of its ultimate disposition (as a "Warning") following the union grievance procedure, rather than at the point in time first issued.

As support for her contention that the letters did constitute adverse employment action, Plaintiff offers the affidavit of a co-worker that receipt of the progressive letters would have deterred that co-worker from taking any action to pursue or maintain an

employment discrimination claim.[11]  The affidavit is partially undermined by the co-worker's deposition testimony that she had not seen or spoken to Plaintiff in over a decade, and therefore had no personal knowledge of Plaintiff's situation.  (Doc. 51-13 at 8, 12).  The affidavit also fails to demonstrate the competence of the co-worker to testify as a "reasonable employee."  In any event, the "reasonable employee" standard is an objective one.  Ironically, to the extent that the standard is viewed subjectively, the record reflects that Plaintiff herself was not dissuaded from filing a second EEO Complaint shortly *after* receiving the letters in question, despite her allegedly  fragile psychological state at the time.

Given the lack of published case law on point to support Defendant's position that this Court should not consider the original Suspension letter, and giving Plaintiff the benefit of the doubt, the Court declines to recommend summary judgment based upon Plaintiff's failure to prove the "adverse employment action" element of her retaliation claim.

### b.  Causal Connection

More persuasive is Defendant's argument that Plaintiff cannot prove the fourth element of her prima facie case - the existence of any causal connection between Mr. Westerfield's April 2005 letters and Plaintiff's prior EEOC activity in 2004.  Mr. Westerfield has expressly denied that Plaintiff's protected activity played any role in sending the April 2005 letters.  (Doc. 46-3 at ¶ 8).

---

[11] Plaintiff has also offered in opposition to summary judgment an "expert report" of her economist, Mr. Jamal Rashed, which opines that Plaintiff suffered significant economic damages from being forced off work by her employer, from September 29, 2004 through 2011.  I do not find Mr. Rashed's opinion to be probative on the issue of whether the three April 2005 letters constituted "adverse employment action" for purposes of Plaintiff's retaliation claim, due to the discrepant dates and the overbroad scope of Mr. Rashed's opinions.

It is true that the April 12, 2005 letter request for FMLA documentation was sent by Mr. Westerfield less than a week after he was contacted by an EEOC investigator in connection with Plaintiff's 2004 EEO Complaint.  Very close temporal proximity can, under some circumstances, give rise to an inference of causation.  *But see generally Spengler v. Worthington Cylinders,* 615 F.3d 481, 494 (6th Cir. 2010)(Temporal proximity, standing alone, is not enough, but when combined with other evidence, can establish a causal connection for a retaliation claim).  On the other hand, the temporal proximity between the April 6 investigator's letter to Mr. Westerfield and Mr. Westerfield's April 12 request for information cannot possibly establish a causal connection in this case, in part because the April 12 letter was simply a request for information that was not "adverse."  Any inference of cause and effect between the April 6, 2005 investigative letter and all three April 2005 letters is completely rebutted by the consistency of the earlier January/February 2005 sequence of letters with virtually the same letters being issued in April 2005 for the same conduct -Plaintiff's failure to submit FMLA documentation and/or to respond to repeated requests.

Defendant asserts that Mr. Westerfield did not know of Plaintiff's protected activity when he issued the first sequence of letters, in January/February 2005, so no fact-finder could find the letters to be causally related to Plaintiff's protected activity.[12]  Plaintiff urges this Court to draw the opposite conclusion based upon a copy of a "Dispute Resolution Specialist's Inquiry" dated 12/17/04, that includes a reference to an "interview with Ed

---

[12]Defendant also argues that there is no evidence that Mr. Westerfield was aware that he *personally* was the subject of EEOC charges prior to April 6, 2005.  However, there is no requirement that the decision maker be the subject of an EEOC charge, so long as he is aware of the plaintiff's protected activity.

Westerfield, Manager, on November 10, 2004." (Doc. 51-7 at 2).  Mr. Westerfield sent Plaintiff the first "request for information" letter two months later- on January 12, 2005.

This Court concludes that even if Mr. Westerfield was *generally* aware of Plaintiff's complaints against Mr. Price in November 2004, his January 2005 request for information was so rote and innocuous that temporal proximity alone cannot possibly suffice to show that his January 2005 request for FMLA documentation was somehow in retaliation for her prior complaint of discrimination.  The connection between Plaintiff's 2004 discrimination claim and the April letters is even more tenuous.  Therefore, Defendant is also entitled to summary judgment based upon Plaintiff's failure to prove the fourth element of her retaliation claim - a causal link between the allegedly adverse action and her protected activity.

### III.  Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED THAT** Defendant's motion for summary judgment (Doc. 46) be **GRANTED**, and that this case be closed and stricken from the active docket.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DIANA ELISABETH GUETHLEIN,                Case No. 1:09-cv-451

        Plaintiff,                             Weber, J.
                                            Bowman, M.J.

    v.

PATRICK DONAHOE, Postmaster General,
United States Postal Service,

        Defendant.
.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).