UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DIANA ELIZABETH GUETHLEIN,

        **Plaintiff**

    v.                      Case No. 1:09-cv-451-HJW

PATRICK DONAHOE, Postmaster General,
United States Postal Service,

        **Defendant**

## ORDER

This matter is before the Court upon the defendant's "Motion for Summary Judgment" (doc. no. 46), which plaintiff opposes. The matter was referred to the Magistrate Judge, who issued a "Report and Recommendation" (doc. no. 53), recommending that the motion be granted. Plaintiff filed objections (doc. no. 60), and defendant responded (doc. no. 61). The Court held a hearing on December 12, 2012, at which respective counsel presented oral arguments. Upon *de novo* review of the record, including the objections and response, the Court finds that the Magistrate Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case. The Court therefore will **adopt** the Report and Recommendation and **grant** the motion for summary judgment for the following reasons:

**I. Background**

The relevant material facts are largely undisputed and have been set forth in

1

considerable detail in the Report and Recommendation (doc. no. 53) and in the defendant's "Statement of Proposed Undisputed Facts" (doc. no. 46, Ex. A). Those facts need only be summarized here. To the extent the plaintiff disagrees as to the legal significance of any material facts, such arguments will be discussed herein.[1]

Plaintiff began working for the United States Postal Service ("USPS") in 1985 as a letter carrier (doc. no. 3 at 7). She injured her back in 1987 and indicates she had resulting physical restrictions. She returned to postal employment in 1992. To accommodate her restrictions, she was given work as a general clerk at various USPS locations near Cincinnati, Ohio over the next decade. As of November of 2003, she was assigned to the Mid-City Station, whose operations included some postal service work at the nearby Internal Revenue Service ("IRS") facility (doc. no. 3-1 at 13). Postal employees with physical restrictions were assigned work at Mid-City, IRS, or other stations, depending on the type and amount of work locally available for them. Plaintiff indicates that documentation of her restrictions were kept on file at the Mid-City Station (doc. no. 3-1 at 18).

On August 17, 2004, plaintiff claims that her supervisor, Jim Price, told her to move an "APC," a task she alleges was "outside her restrictions." Plaintiff indicates that when Price asked what her restrictions were, she "could not remember and answered incorrectly and said it may be 15 pounds" (doc. no. 3-1 at

---

[1] Although the parties differ slightly on certain dates, such discrepancies do not create any genuine disputes of material fact. For example, defendant indicates that plaintiff filed her EEOC complaint on November 26, 2004 because the face of the document reflects such filing date. Plaintiff contends she signed it on November 26, 2004, but actually filed it on December 1, 2004 (doc. no. 51-1 at 1, ¶ 6).

44). Plaintiff then presented him with a form for sick leave for the one remaining hour of work that day. According to plaintiff, Price would not sign it, became angry, and told her she would have to get a doctor's excuse for her absence. Plaintiff alleges that she developed a headache and "cried continuously" from this "abuse."

Over a month later, on September 28, 2004, Ed Westerfield, the manager of the Mid-City Station, advised plaintiff that she was being transferred to the Murray Station location due to lack of work at Mid-City. Plaintiff does not dispute this (doc. no. 51-1 at 1, ¶ 4). She indicates that the next evening on September 29, 2004, she had severe anxiety and her doctor ordered her not to return to work. Plaintiff requested, and was granted, 90 days of FMLA leave beginning October 4, 2004.

While on leave, on November 26, 2004, plaintiff filed an EEOC complaint against Price for allegedly asking her to perform the task "outside her restrictions" (doc. nos. 3-1 at 43)[2] Plaintiff also named Rick Colett (supervisor) and Ed Westerfield (manager) in her 2004 EEOC complaint. Plaintiff indicates that the EEO office "told" her that Mr. Westerfield "should be part of the EEO [complaint]" (doc.

---

2 **Despite attaching documentation to her federal complaint reflecting that her EEOC complaint was filed on November 26, 2004 (doc. no. 3-1 at 43), plaintiff incorrectly alleged that it was filed in mid-September 2004 (doc. no. 3 at 20, ¶ 39). Much of plaintiff's argument (seeking to attribute retaliatory motive to Mr. Westerfield's transfer of plaintiff to Murray Station) is based on her own misplaced reliance on an incorrect filing date. In other words, plaintiff argues that she filed her EEOC complaint in mid-September and that Mr. Westerfield then transferred her to Murray Station on September 28, 2004 in "retaliation." The face of plaintiff's EEOC complaint indicates it was filed months *after* Mr. Westerfield had already transferred plaintiff to Murray Station. As the Magistrate Judge correctly points out (doc.no. 53 at 3, fn. 4), plaintiff now acknowledges this (doc. no. 51-1 at 1, ¶ 6).**

no. 3 at 20, ¶ 39).[3]

Plaintiff thereafter remained on FMLA leave, and thus, never reported to work at Murray Station (doc. no. 46-2, Guethlein Dep. at 13). When her initial 90 day leave period expired on or about January 11, 2005, Mr. Westerfield sent plaintiff a letter on January 12, 2005, requesting that she update her FMLA documentation (doc. no. 3-1 at 40-41). He enclosed Form WH-380 "Certification of Health Care Provider" and "Publication 71" (a pamphlet of instructions regarding requests for FMLA leave). Plaintiff ignored the request. Meanwhile, plaintiff indicates she requested, and was granted, another 90 days of FMLA leave until April 2, 2005 (doc. no. 3-1 at 8, Aff. ¶ 34).

Having ignored Mr. Westerfield's letter, plaintiff received on January 25, 2005, a notice to report for a pre-disciplinary interview for failure to comply with instructions. She ignored the notice and failed to appear for the scheduled interview. She then received a "Letter of Warning" dated February 8, 2005, emphasizing the importance of complying and warning her of the consequences for failing to do so (doc. no. 3-1 at 38-39). She ignored this as well, but contacted her union to file a grievance regarding the "Letter of Warning."[4]

When plaintiff's second 90 day period of FMLA leave expired on April 2,

---

3 **Plaintiff's narrative in her November 2004 EEOC complaint confuses the timing of certain events. For example, although Mr. Westerfield transferred her to Murray Station on September 28, 2004, plaintiff incorrectly alleged in her EEOC complaint that he had transferred her in August 2004.**
4 **Although plaintiff indicates that "she does not remember filing a grievance on February 8, 2005" (doc. no. 51-1 at 3, ¶14), the record reflects that she did file a grievance and that it pertained to the "Letter of Warning" dated February 8, 2005.**

4

2005, she did not report to work (doc. 3-1 at 9, Guethlein Aff. ¶ 42). According to plaintiff, "medical documentation was submitted immediately for April 2, 2005 and continuing for an indefinite period" indicating that she was unable to return to work (doc. no. 3-1 at 9, Aff. ¶ 34). Plaintiff contends her doctor submitted information to "the FMLA Department," but plaintiff admits she did not respond to any of Mr. Westerfield's letters. (<u>Id</u>.) That same day, plaintiff wrote a letter to the postmaster complaining that she did not like her mail clerk duties and wanted a better job (doc. no. 3-1 at 53). In the letter, she indicated she had been on FMLA leave for migraine headaches, rather than anxiety and/or depression.

Shortly after plaintiff's second leave period expired, Mr. Westerfield sent plaintiff a letter on April 12, 2005, indicating:

> "You have been absent from work for an extended period of time. According to my records, I sent you a 5 day letter on January 12, 2005 that you never responded to. Also according to my records you have exhausted your 12 weeks of FMLA for the calendar year of 2005. Therefore, I am informing you that you will be required to provide acceptable documentation to support your absence from work" (doc. no. 3-1 at 34-35).

The letter directly quoted language from the Employee and Labor Relations Manual ("ELRM") explaining that such "documentation should provide an explanation of the nature of the employee's illness or injury sufficient to indicate to management that the employee was (or will be) unable to perform his or her normal duties for the period of absence" and that "supervisors may accept proof other than medical documentation if they belief it supports approval of the sick leave application" (doc. no. 3-1 at 40). Again, plaintiff ignored the letter.

5

On April 16, 2005, Bill Miller, the manager of the Murray Station, transferred plaintiff back to the Mid-City Station. On April 20, 2005, plaintiff was notified by mail to report on April 27, 2005, for a rescheduled pre-disciplinary interview at the Mid-City Station. Plaintiff ignored the notice and failed to show up for the interview. Plaintiff received a "Notice of Suspension" dated April 29, 2005, issued by Acting Supervisor Ken Gilligan (doc. no. 3-1 at 29-30). In her affidavit, plaintiff indicates that she ignored all these notices based on her belief that Mr. Westerfield was "not her manager" and because she did not "feel that he had a right to the FMLA information" (Id. at 9, ¶¶ 40, 43).[5]

On June 20, 2005, the union settled plaintiff's grievance regarding the February 8 "Letter of Warning" (doc. no. 3-1 at 24, 37 indicating that this reflects "the agreement of all parties"). The union also obtained a reduction of plaintiff's seven-day suspension to a letter of warning, which would then be removed from her file after six months if she had no more infractions. Despite the settlement of this matter, plaintiff filed a second EEOC complaint on August 1, 2005, alleging retaliation and discrimination based upon sex, age and disability (doc. no. 3-1 at 16). She identified the specific dates of "January 12, 2005, January 28, 2005, and April 20, 2005," which are the dates of the notices she had received. She later withdrew her claims of sex and age discrimination.

The USPS investigated plaintiff's grievance regarding the April letters and

---

5 **Despite acknowledging that she ignored the letters, she inconsistently alleges that she sent medical documentation to Mr. Westerfield (see doc. no. 3 at 9, ¶ 43), who never received it. For purposes of summary judgment, plaintiff cannot create a genuine dispute merely by contradicting herself.**

**notice of suspension. An Administrative Law Judge ("ALJ") found no discrimination by the USPS, which adopted the decision as its final agency action. Plaintiff administratively appealed, and the decision was affirmed on March 25, 2009 (doc. no. 3-1 at 22-27). The administrative appeal decision pointed out that plaintiff had admitted receiving the letters and not responding to them, that she had <u>incorrectly</u> believed that Mr. Westerfield was "not her manager," that plaintiff had admitted that she had "later learned that she had been transferred back to the Mid-City Station from the Murray Station, and that she had admitted that [Ed Westerfield] *was* her manager" (doc. no. 3-1 at 24-25) (emphasis added). Plaintiff requested reconsideration, but prior to a ruling, filed the present lawsuit under the Civil Rights Act of 1964, at 42 U.S.C. § 2000e-3, and the Rehabilitation Act of 1973, 29 U.S.C. § 790, et seq. Plaintiff filed a 32-page federal complaint with over 50 pages of attachments.**

**In her federal complaint, plaintiff greatly expanded her claims beyond the scope of her second EEOC complaint by attempting to sue 17 postal employees, supervisors, and managers at six different locations for alleged acts spanning nearly two decades from 1987 to 2005, during which she indicates she held at least 15 different positions at the USPS. Plaintiff sought ten million dollars in damages. Upon motion, this Court dismissed Counts 1 and 2, and part of Count 3 (doc. no. 30, "Order"). The only remaining claim is plaintiff's assertion in Count Three that the letters sent to plaintiff by Mr. Westerfield in April 2005 constitute "retaliation" for her filing of an EEOC complaint in 2004. Based on the April letters, plaintiff**

7


alleged "retaliation from USPS management" when Ed Westerfield transferred her back to Mid-City Station allegedly "so that he could suspend her from work [for] failure to follow instruction[s]" (doc. no. 3 at 27, ¶ C).

The USPS moved for summary judgment, arguing plaintiff had failed to establish a prima facie case of retaliation, and moreover, had failed to show any "pretext." Specifically, at step three defendant argued that the "discipline she complains of cannot meet the standard of constituting an 'adverse action' within the meaning of applicable case law" (doc. no. 46 at 1-2, 8, 10). At step four, defendant argued that both sets of Mr. Westerfield's letters to plaintiff were consistent and followed the progressive discipline structure of the Postal Service, and that plaintiff had failed to show any causal connection between the April 2005 letters and her 2004 EEOC complaint (doc. no. 52 at 9-10). Finally, the defendant argued that "Ms. Guethlein cannot rebut, as pretext, the reasons for these actions" (Id. at 10-18). Plaintiff filed a lengthy response with attached exhibits, totaling 290 pages (doc. no. 51).

The Magistrate Judge recommended granting summary judgment in favor of the USPS because: 1) plaintiff had failed to establish a prima facie case because she had not shown any "causal connection" at the fourth step, and 2) plaintiff had also failed to show any "pretext." Plaintiff filed lengthy objections (doc. no. 60), to which defendant responded (doc. no. 61). This Court heard oral arguments on the objections. This matter is ripe for consideration.

**II. Standard of Review**

Rule 56(a) of the Federal Rules of Civil provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense or the part of each claim or defense on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(a). Under Rule 56, the moving party bears the burden of proving that no genuine dispute of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (l986). The court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. Id. at 587. The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 52 (1986). A genuine dispute exists "only when there is sufficient evidence on which the jury could reasonably find for the plaintiff." Id. at 252. On summary judgment review, the court's role is not to "weigh the evidence and determine the truth of the matter," but rather, to determine whether there are any genuine disputes of material fact for trial. Id. at 249. The United States Supreme Court has observed that the main purpose of the summary judgment rule is "to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 377, 323 33 (1986).

III. Relevant Law

Count Three is labeled "retaliation" but does not specify what statute plaintiff's claim is brought under. Plaintiff argues under Title VII, and the parties do not dispute the applicable law. Title VII prohibits retaliation against an employee

9


"because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" in connection with an allegedly unlawful employment practice. 42 U.S.C. § 2000e-3(a). This provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006). The Rehabilitation Act of 1973 also has an anti-retaliation provision stating that "[n]o person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by this Act," 29 U.S.C. § 794(a) (1994), and incorporates the burden shifting framework applicable to Title VII claims. Plautz v. Potter, 156 Fed.Appx. 812, 816 (6th Cir. 2005) (citing Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896 (2001)).

To establish a prima facie case of retaliation with indirect evidence, plaintiff must show that (1) she engaged in activity protected by Title VII; (2) the plaintiff's protected activity was known to defendant; (3) defendant thereafter took an adverse employment action against the plaintiff; or subjected plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the protected activity and the adverse employment action. Morris v. Oldham Fiscal Ct., 201 F.3d 784, 792 (6th Cir. 2000); Hunter v. Sec'y of U.S. Army, 565 F.3d 986, 996 (6th Cir. 2009). If the plaintiff establishes a prima facie case, the burden of production shifts to defendant to articulate a legitimate nonretaliatory reason for its action. Upon doing so, the burden shifts back to plaintiff to show that the defendant's proffered reason was merely a pretext for retaliation. St. Mary's Honor

Center v. Hicks, 509 U.S. 502, 507-8 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). The "ultimate burden of persuasion remains at all times" with plaintiff. Id. at 253.

IV. Discussion

A. First Three Steps of the Prima Facie Case

The parties agree that plaintiff (1) engaged in protected activity when she filed her 2004 EEOC complaint, and (2) that this protected activity was known to the USPS. At step three of the prima facie case, the defendant initially argued that the "seven-day no-loss-of-pay suspension" had no impact on plaintiff's employment and was later removed from her personnel file, and thus, did not rise to the level of an "adverse action."[6] The Magistrate Judge discussed relevant case law, including Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (cautioning that "it is important to separate significant from trivial harms"), and pointed out the deficiencies in plaintiff's evidence at this step, but ultimately declined to recommend summary judgment at step three (doc. no. 53 at 22).

Although the Magistrate Judge had recommended in plaintiff's favor at this step, plaintiff nonetheless "objected." Much of the "objection" is merely a rehash

---

6 **Research reflects numerous postal cases holding that minimal employment actions, such as a letter of warning and/or a "no time-off suspension" are not materially adverse and therefore not actionable. See, e.g., McMillian v. Potter, 130 Fed. Appx. 793, 796-97 (6th Cir. 2005); Tolbert v. Potter, 2005 WL 1348986 at * 5-6 (E.D. Mich.), affirmed by 206 Fed.Appx. 416 (6th Cir. 2006); Strong v. Potter, 2008 WL 4791318, *9 (E.D.Mich.); Harris v. Potter, 310 F.Supp.2d 18, 21 (D.D.C. 2004); see also, Verkade v. U.S. Postal Service, 2009 WL 279048 (W.D.Mich.), affirmed by 378 Fed.Appx. 567(6th Cir. 2010) ("Not everything that makes an employee unhappy is an adverse employment action.") (quoting Stone v. Bd. of Dir. of TVA, 35 Fed.Appx. 193, 200 (6th Cir. 2002).**

11

of plaintiff's overall theory (see doc. no. 60 at 2-9), rather than a specific objection to the Magistrate Judge's actual recommendation at step three. See Fed.R.Civ.P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been *properly* objected to.") (italic added); Thomas v. Arn, 474 U.S. 140, 147 (1985) (observing that objections must be specific in order to "enable the district judge to focus attention on those issues-factual and legal-that are at the heart of the parties' dispute"); Cline v. Myers, 2012 WL 3553490, *2 (6th Cir. (Ohio)) (objections must be specific).

At the hearing, defendant aptly observed that plaintiff's objection regarding step three was pointless, and that in any event, defendant would concede step three and rely on its arguments at step four (no causal connection) and at the final step (no pretext). Given that the Magistrate Judge recommended in plaintiff's favor at step three, the Court need not consider plaintiff's pointless and generalized "objection" to this recommendation. See Mira v. Marshall, 806 F.2d 636, 637-38 (6th Cir. 1986) (de novo review is not required where the objections are frivolous, conclusive, or general); U.S. v. Nelson, 2012 WL 5839520, *1 (S.D.Ohio) (J. DLott) (same).[7]

---

7 If the Court were to consider plaintiff's objection at step three, it is questionable whether plaintiff's suspension actually amounted to an "adverse action" under the circumstances of this case. A showing of injury or harm is "a fundamental requirement for demonstrating retaliation." Garner, 554 F.3d at 624 (affirming the district court's holding at step three that plaintiff's retaliation claim was "groundless"). At the hearing, plaintiff's counsel acknowledged that plaintiff had suffered no loss of pay, that this minor suspension was reduced to a letter of warning and removed from her file after six months, that she never returned to work, and that she subsequently "retired on disability" sometime in 2007. "The

**B. Step Four of the Prima Facie Case: Causal Connection**

Next, plaintiff objects to the Magistrate Judge's recommendation that, at the fourth step of the prima facie retaliation case, plaintiff has failed to show a "causal connection" between her 2004 EEOC complaint and her seven day suspension on April 28, 2005 for failure to follow instructions. Plaintiff quotes several paragraphs from the Report and Recommendation (see doc. no 60 at 10, quoting doc. no. 53 at 23), but then merely repeats her mistaken belief that she could disregard Mr. Westerfield's letters because he "was not Diana Guethlein's manager and therefore had no right to such information" (doc. no. 60 at 11). Repeating this phrase does not make it so. In the first place, it is undisputed that plaintiff was transferred back to Mid-City in April 2005 and that plaintiff failed to follow the instructions of "her manager" at that time. Moreover, plaintiff ignores the fact that Bill Miller, the manager of Murray Station, was the person who transferred plaintiff back to Mid-City, not Mr. Westerfield (see doc. no. 3-1 at 21, Plaintiff's Narrative for her EEOC Complaint of August 1, 2005). In other words, plaintiff seeks to attribute retaliatory animus to Mr. Westerfield for the acts of another person at another location. Even considering the evidence in the light most favorable to plaintiff, this evidence is not sufficient to raise any reasonable inference that plaintiff's protected activity was the "likely reason" for her transfer back to Mid-City and her eventual suspension. See, e.g., <u>Grizzell v. City of Columbus</u>, 461 F.3d 711, 724 (6th

---

'anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm.' " <u>Hunter</u>, 565 F .3d at 995 (quoting <u>Burlington Northern</u>, 548 U.S. at 67).

13

Cir. 2006) ("mere personal belief, conjecture and speculation" are insufficient to support an inference); <u>Michael v. Caterpillar Fin. Servs. Corp.</u>, 496 F.3d 584, 596 (6th Cir. 2007), cert. denied, 552 U.S. 1258 (2008). Plaintiff's attenuated argument lacks merit.

To the extent plaintiff seeks to excuse her non-compliance because Mr. Westerfield had requested "protected health information" (doc. no. 60 at 11), the federal regulations provide that employers may request information regarding FMLA certification and that "the employee must provide a complete and sufficient certification to the employer." 29 C.F.R. § 825.305. Additionally, a requirement that an employee provide a general diagnosis, or a less specific statement regarding the "nature" of the employee's illness, upon returning from an absence of a specified length is not a prohibited inquiry under the Rehabilitation Act. 42 U.S.C.A. § 12112(d)(4).

At the fourth step of the prima facie case, the Court agrees with the Magistrate Judge's recommendation that plaintiff has failed to establish that her seven-day suspension in 2005 for failing to follow instructions had any causal connection with her 2004 EEOC complaint. Although plaintiff makes much of the fact that Mr. Westerfield was aware of her 2004 EEOC complaint at the time she was transferred back to Mid-City in April 2005 by Mr. Miller, "the mere fact that an adverse employment decision occurs after a charge of discrimination is not, standing alone, sufficient to support a finding that the adverse employment decision was in retaliation to the discrimination claim." <u>Balmer v. HCA, Inc.</u>, 423

F.3d 606, 615 (6th Cir. 2005), abrogated on other grounds by Fox v. Vice, 131 S.Ct. 2205 (2011); see also, Spengler v. Worthington Cylinders, 615 F.3d 481 (6th Cir. 2010) (explaining that "temporal proximity, standing alone, is not enough"). Additionally, the record reflects that postal employees with physical restrictions were given work assignments at various Cincinnati area stations in order to accommodate their restrictions. A mere transfer based on work availability falls quite short of suggesting any "retaliation." See Garner v. Cuyahoga Cty. Juv. Ct., 554 F.3d 624, 640 (6th Cir. 2009) (plaintiff failed to establish a materially adverse employment action based on her transfer to a different location and other inconsequential matters). Even viewing the evidence of record in plaintiff's favor, no evidence suggests that plaintiff's transfer was retaliatory in any way. Her attenuated argument that Mr. Miller transferred plaintiff so that Mr. Westerfield could suspend her requires the piling of inference upon inference and is not supported by actual evidence.

The Magistrate Judge correctly also pointed out that Mr. Westerfield's letter of April 12, 2005 was "simply a request for information" and was not "adverse" in any way (doc. no. 53 at 23). Plaintiff admits she ignored all the notices. Plaintiff was disciplined for failing to follow instructions. She is not insulated from discipline for violating work rules merely because she previously filed an EEOC complaint. Defendant points out that plaintiff has failed to rebut the declaration of Director of Human Resources Steven Goebel, who indicates that Mr. Westerfield had the authority to issue the letters to plaintiff and that his actions were proper

15

under applicable postal rules (doc. no. 61 at 9). Although plaintiff now attempts to avoid the consequences of her own failure to respond to the April letters, this does not provide a basis to infer that those letters were generated out of any retaliatory animus.

As the defendant points out, and as the Magistrate Judge correctly discussed, Mr. Westerfield's letters in April 2005, were entirely consistent with his prior letters in January 2005.[8] Upon expiration of each 90 day period of leave, he sent a letter asking her to update her FMLA information. This suggests that his actions in April of 2005 were intended to comply with postal rules (and FMLA regulations) and were not unlawfully motivated. See, e.g., Steiner v. Henderson, 121 Fed.Appx. 622, 627-28 (6th Cir. (Ohio)), cert. denied, 545 U.S. 1140 (2005) (postal employee failed to establish a causal connection between her anti-discrimination complaint and alleged adverse action consisting of letters concerning medical documentation required for sick leave and expiration of accrued sick leave; USPS provided compelling causal explanations for the letters' timing, including that the employee's sick leave was expiring).

C. Final Step: Pretext

Finally, plaintiff objects to the Magistrate Judge's recommendation that under the burden-shifting evidentiary framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), plaintiff has not shown that her employer's stated

---

8 **Plaintiff's objection that this Court "does not have jurisdiction over the January letters" is nonsensical (doc. no. 60 at 11). The Court dismissed Counts 1, 2, and part of 3, but may still consider the evidence of record, including the January letters.**

legitimate non-discriminatory reason for her suspension was merely a "pretext" for retaliation. A plaintiff may demonstrate pretext by showing that the proffered reasons: (1) had no basis in fact, (2) did not actually motivate the employer's action, or (3) were insufficient to motivate the employer's action. Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir. 2009).

Plaintiff's refusal to obey Mr. Westerfield's directions was contrary to the rules applicable to all postal employees in the Postal Service's Employment and Labor Relations Manual (Ex. 3, ¶ 4, Goebel Dec.). Plaintiff admitted that she disobeyed her employer's instructions to furnish information regarding her FMLA leave. She admits she did not send the information to Mr. Westerfield as directed (doc. 3-1 at 8-10, Aff.). She does not point to anyone else who did this and was not disciplined. Although she again argues that Mr. Westerfield was not authorized to request the information, the USPS points out that plaintiff ignored the rules of the Postal Service that required her to obey an order and then grieve it if she disagreed with the order (doc. no. 46-4 at 2, ¶ 4 Goebel Decl.; doc. no. 52 at 10). Plaintiff did not do so. Plaintiff also admits she failed to show up for the scheduled pre-disciplinary interview and did not otherwise respond to the warning letters. Plaintiff has not shown that the stated reasons for her suspension had no basis in fact or were insufficient to motivate the action. Chen, 580 F.3d at 400.

Defendant points out that the expiration of plaintiff's leave triggered the initial letters (in January and April) and that such letters are routine in cases involving employees with extended medical absences. (Doc. 46-4, ¶ 3, Goebel

17

Decl.). The federal regulations governing FMLA leave lend support to this assertion. See, e.g., 29 C.F.R. § 825.305(a) ("An employer must give notice of a requirement for certification each time a certification is required."); 29 C.F.R. § 825.305(b) ("In most cases, the employer should request that an employee furnish certification at the time the employee gives notice of the need for leave or within five business days thereafter . . . The employer may request certification at some later date if the employer later has reason to question the appropriateness of the leave or its duration."); 29 C.F.R. § 825.305(c) ("The employee must provide a complete and sufficient certification to the employer . . . The employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient."); 29 C.F.R. § 825.305(e) ("Where the employee's need for leave . . . lasts beyond a single leave year. . . , the employer may require the employee to provide a new medical certification in each subsequent leave year").

     Plaintiff admits that she did not respond to Mr, Westerfield's letters, despite repeated written warnings. Although plaintiff indicates her doctor sent some information to someone other than Mr. Westerfield (doc. 51-5), this did not absolve plaintiff of the responsibility to respond directly to the April letters. Plaintiff has not established that the employer's stated reason for her suspension was not the "true reason." Plaintiff's attenuated arguments lack merit. Plaintiff has no one but herself to blame for her own unreasonable and obstinate refusal to

respond to the April letters.

Accordingly, the plaintiff's "Objections" (doc. no. 60) are **OVERRULED**; the Magistrate Judge's Report and Recommendation is **ADOPTED**; the defendant's "Motion for Summary Judgment" (doc. no. 46) is **GRANTED**; summary judgment is therefore GRANTED in defendant's favor on Count Three; this case is **DISMISSED** and **TERMINATED** on the docket of this Court, with costs to plaintiff.

IT IS SO ORDERED.


IT IS SO ORDERED.

                                                **s/Herman J. Weber**
                                  **Herman J. Weber, Senior Judge**
                                  **United States District Court**